UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

JARZETTE JACOBS, individually; and EBONY
BREWTON-AUSTIN, as Administratrix of the
Estate of JAH'LIRE NICHOLSON and as Mother
and Natural Guardian of Infant J.B.,

**COMPLAINT**

Jury Trial Demanded

          Plaintiffs,

      -against-

CITY OF NEW YORK; Police Officer DJAFAR
TSAABBAST; Police Officer DANIEL DECARIO;
JOHN and JANE DOE 1 through 10, individually
and in their official capacities (the names John and
Jane Doe being fictitious, as the true names are
presently unknown),

          Defendants.


------------------------------------------------------------- x

## <u>NATURE OF THE ACTION</u>

1.     This is an action to recover money damages arising out of the violation of

plaintiffs' rights under the Constitution.


## <u>JURISDICTION AND VENUE</u>

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

Fourth and Fourteenth Amendments to the Constitution of the United States, and the

laws of the State of New York.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5.     This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6.     Plaintiffs demand a trial by jury in this action.

## PARTIES

7.     Plaintiff Jarzette Jacobs is the mother of decedent Jah'Lire Nicholson. Both Jarzette Jacobs and Jah'Lire Nicholson are African-American.

8.     Plaintiff Ebony Brewton-Austin is the mother of the decedent's child, infant plaintiff J.B., and also the administratrix of plaintiff the Estate of Jah'Lire Nicholson.

9.     Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.     Defendant Police Officer Djafar Tsaabbast ("Tsaabbast"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Tsaabbast is sued in his individual and official capacities.

11.     Defendant Police Officer Daniel Decario ("Decario"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Decario is sued in his individual and official capacities.

12.     At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD.  Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

13.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

14.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

15.     In the early morning hours of January 14, 2017, plaintiff Jarzette Jacobs

and her son Jah'Lire Nicholson were lawfully present inside their home in the basement

apartment of 137- 64 Westgate Street in Queens, New York.

16.     Ms. Jacobs was talking when there was a loud knocking at the door.

17.     Ms. Jacobs opened the door to a group of uniformed NYPD officers,

including the individual defendants, standing on the steps leading to the backyard.

18.     In response to questions from the defendants, Ms. Jacobs explained that

was OK and had not called the police.

19.     As Mr. Nicholson attempted to close the apartment door, one of the

defendants kicked it open.

20.     Moments later, Ms. Jacobs stepped between Mr. Nicholson, who held a

household screwdriver casually at his waist and had not been told to drop it, and the

defendants, who remained on the steps leading to the apartment.

21.     Mr. Nicholson at no point made any motions with the screwdriver that

were remotely threatening to either Ms. Jacobs or the police.

22.     Mr. Nicholson at no point said anything that was remotely threatening to

either Ms. Jacobs or the police.

23.     Mr. Nicholson at one point rested his head on Ms. Jacobs' shoulder, and it was immediately apparent to all present that he was undergoing a significant emotional experience and was in need of comforting and gentleness.

24.     Instead, Ms. Jacobs heard one of the defendants yell "STUN GUN" and watched as TASER barbs flew past her head and in the direction of her son.

25.     From her position between the defendants and her son, Ms. Jacobs observed Mr. Nicholson slowly turn around and walk into a bedroom, away from her and the officers.

26.     The officers said nothing to Mr. Nicholson as he walked away.

27.     As Mr. Nicholson was walking into the bedroom, one of the defendants discharged his firearm, sending the bullet past Ms. Jacobs's left ear – Ms. Jacobs felt a a "whoosh" of air.

28.     Defendants shot and killed Mr. Nicholson as he was walking away from them into the bedroom.

29.     On Information and belief, the defendant(s) who shot the bullet(s) that killed Mr. Nicholson were defendant Tsaabbast and / or defendant Decario.

30.     On Information and belief, Mr. Nicholson thereafter staggered for some distance further Into the back of the apartment before finally falling down, bleeding profusely.

31.     On information and belief, Mr. Nicholson experienced conscious pain and suffering after being shot, prior to his death.

32.     One of the defendants then ran past Ms. Jacobs and into the bedroom.

33.     Ms. Jacobs was frozen in shock and fear.

34.     Defendant officers then pulled Ms. Jacobs from her home.

35.     In freezing temperatures, Ms. Jacobs, a hardworking fifty-five year old woman, was brought into her backyard wearing only a brassiere and pants, with no shirt or shoes.

36.     A defendant then grabbed Ms. Jacobs and told her to put her hands behind her back, and she was handcuffed.

37.     Ms. Jacobs had not done anything remotely criminal.

38.     With officers refusing to provide any information about her only child, dying inside the apartment, Ms. Jacobs was made to stand publicly in handcuffs and a bra for approximately twenty minutes.

39.     Ms. Jacobs was then made to walk a significant distance to an ambulance.

40.     No one would tell Ms. Jacobs anything about the status of her son.

41.     Ms. Jacobs was then taken from the ambulance to a police car.

42.     Defendants then involuntarily took Ms. Jacobs to a police precinct.

43.     At the precinct, defendants put Ms. Jacobs in a room – still shoeless and partially dressed – and told her that she could not leave.

44.     No information was provided, and Ms. Jacobs' questions about the fate of her son remained unanswered.

45.     Three to four hours later, Ms. Jacobs was moved by defendants to another room in the precinct.

46.     Approximately thirty minutes later, two male defendant detectives entered the room and told Ms. Jacobs that Jah'Lire Nicholson, her only child, was dead.

47.     In death, Mr. Nicholson was defamed by John Does members of the NYPD in press accounts, which inaccurately portrayed Mr. Nicholson as having brandished the screwdriver in a threatening manner during the encounter in order to seek to cover up Defendants' unlawful killing of Mr. Nicholson.

48.     The reality is that Mr. Nicholson's death was a gratuitous act of violence that was unprovoked and entirely unwarranted under the law.

49.     The indignity with which Ms. Jacobs was treated following the death of her son is indicative of the callousness with which her son was killed, and the defendants' primary interest in covering up their own malfeasance.

50.     Following the unlawful killing of Mr. Nicholson, Defendants tore up Ms. Jacobs home, including smashing holes in her walls and breaking her furniture.

51.    Defendants also padlocked Ms. Jacobs' home for a long time following the incident, and posted a notice that neither she nor anyone else was permitted to enter her home.

52.    Tragically, Mr. Nicholson's death had a profound impact on his young daughter, infant plaintiff J.B.

53.    Six- year-old J.B., with whom Mr. Nicholson enjoyed a warm and close parental relationship in life, went from a precocious, well-behaved Kindergartener to being expelled from first grade with a PTSD diagnosis:

> **Current Performance and Reports**
> This year, [J.B.] entered first grade in the general education classroom at [REDACTED]. [J.B.] started off the first few days of school well, but 9/15/17 marked the first incident where significant behavior problems were observed.
> [J.B.] left the classroom and ran through the first grade hallway twice, climbed/jumped off of furniture, ripped items off of her teacher's door, and started to destroy this examiner's office. She had to be restrained several times for a long period of time to keep her safe and to keep her from destroying rooms. [J.B.'s] kindergarten teacher was also called to assist since she had a positive relationship with her, but this had no effect. [J.B.'s] mother was contacted and [J.B.] was suspended for a half day. On 9/18/17, the school social worker contacted [Ebony Brewton-Austin] to offer resources in the community for grief counseling as well as assistance. At this time, her mother shared that [J.B.'s] paternal grandmother had shared with [J.B.] specifics regarding the death of her father, despite requests from

her mother to not share that information. The school at this time felt that this new knowledge that [J.B.] had gained was likely the cause of the drastic change in behavior from Kindergarten to first grade... [J.B.] has a diagnosis of PTSD and adjustment disorder...

(Excerpted from J.B.'s school records).

54.    Both J.B. and Ms. Jacobs have been deprived of the love, companionship, comfort, affection, society, solace, moral support, protection, advice, care, affection, financial support, and services of Jah'Lire Nicholson.

55.    Unidentified and supervisory defendants contributed to the circumstances that caused Mr. Nicholson's death; failed to follow procedures when dealing with emotionally disturbed civilians, including requesting the NYPD's Emergency Services Unit; and failed to prevent the unnecessary killing of Jah'Lire Nicholson, even though they had an opportunity to do so.

56.    Defendants failed to follow procedures when dealing with a barricaded suspect, including in failing to request that the NYPD's Emergency Services Unit respond to the incident, even though they had an opportunity to do so.

57.    Defendants are incompetent officers who were unfit and inadequately trained to respond to the incident.

58.    Within ninety days after the claims alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office.

59.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

60.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

61.     Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs and plaintiffs' decedent suffered pain and suffering, loss of love, loss of companionship, loss of comfort, loss of affection, loss of society, loss of solace, loss of moral support, loss of protection, loss of advice, loss of care, pecuniary loss, conscious pain and suffering and loss of services.

## FIRST CLAIM
### Wrongful Death, and Conscious Pain and Suffering

62.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

63.     Defendants acted negligently in responding to the Jacobs residence.

64.     Defendants' negligence caused the death of Jah'Lire Nicholson, who experienced conscious pain and suffering prior to his death after being shot by defendants.

65.     J.B., and thereafter Jarzette Jacobs, are the next of kin of Jah'Lire Nicholson, and Ebony Brewton-Austin is the administrator of his estate.

66.     Plaintiffs have suffered financial damage as a result.

67.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages herein before alleged.

68.     Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under New York State law pursuant to the doctrine of *respondeat superior*.

## SECOND CLAIM
### Home Invasion, Unreasonable Force, False Arrest, and Prevention of Access to Home

69.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

70.     The defendants violated the Fourth and Fourteenth Amendments because they wrongfully invaded plaintiffs' home, used unreasonable force in killing Jah'Lire Nicholson, falsely arrested and used unreasonable force in assaulting and battering his mother, plaintiff Jarzette Jacobs, and prevented her from accessing her home for a significant period of time after the incident.

71.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
**State Law Assault and Battery**

72.     Plaintiffs repeat and reallege each and every allegation as if fully set forth

herein.

73.     By their conduct, as described herein, the defendants are liable to plaintiffs

for having assaulted and battered Jah'Lire Nicholson and his mother Jarzette Jacobs.

74.     Defendant City of New York, as an employer of the individual defendant

officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

75.     As a direct and proximate result of the misconduct and abuse of authority

stated above, plaintiffs sustained the damages alleged herein.

## FOURTH CLAIM
**Negligence; Negligent Hiring/Training/Retention**

76.     Plaintiffs repeat and reallege each and every allegation as if fully set forth

herein.

77.     Defendant City, through the NYPD, owed a duty of care to plaintiff to

prevent the conduct alleged, because under the same or similar circumstances a

reasonable, prudent, and careful person should have anticipated that injury to Jah'Lire

Nicholson and plaintiffs or to those in a like situation would probably result from the

foregoing conduct.

78.    All of the individual defendants were unfit and incompetent for their positions.

79.    Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

80.    Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiffs' injuries.

81.    As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Intentional Infliction of Emotional Distress

82.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

83.    By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon plaintiffs.

84.     The intentional infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

85.     Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon plaintiffs. Defendant City, as employer of each of the individual defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior.*

86.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Negligent Infliction of Emotional Distress

87.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

88.     By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon plaintiffs.

89.     The negligent infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

90.     Defendants, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon plaintiff. Defendant

City, as employer of each of the individual defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

91.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Deliberate Indifference

92.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

93.     The individual defendants were aware of a risk to the life and safety of Jah'Lire Nicholson and failed to act and/or acted improperly, in deliberate indifference to plaintiffs' and Jah'Lire Nicholson's federally-protected constitutional rights.

94.     Accordingly, defendants violated the Fourteenth Amendment because they acted with deliberate indifference the health and well-being of plaintiffs and Jah'Lire Nicholson.

95.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Denial of Due Process and Denial of Equal Protection

96.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

97.   By their conduct as described herein, the individual defendants deprived plaintiffs of due process of law and of equal protection under the law.

98.   Accordingly, defendants violated the Fourteenth Amendment.

99.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## NINTH CLAIM
### Failure to Intervene, and Conspiracy to Cover Up

100.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

101.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

102.   After the incident the individual defendants conspired to cover up the unlawful killing of Mr. Nicholson through, *inter alia*, the fabrication of a false narrative and the defamation of Mr. Nicholson in the press.

103.   Accordingly, the defendants who failed to intervene and who conspired to cover up the wrongful killing of Mr. Nicholson violated the Fourth, and Fourteenth Amendments.

104.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## TENTH CLAIM
### Conversion

105.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

106.   By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, unlawfully converted plaintiffs' property.

107.   Defendants, their officers, agents, servants, and employees were responsible for the conversion of plaintiffs' property. Defendant City, as employer of each of the individual defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

108.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## ELEVENTH CLAIM
### False Arrest and Imprisonment

109.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

110.    By their conduct, as described herein, the defendants are liable to plaintiffs for the false arrest and imprisonment of Jarzette Jacobs.

111.    Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

112.    As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

### TWELFTH CLAIM
### Liability of the City of New York
### for Constitutional Violations

113.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

114.    At all times material to this complaint, defendant City of New York, acting through its police department, and through the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

115.    At all times material to this complaint, defendant City of New York, acting through its police department, and through the individual defendants, had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employee police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These

policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

116.   At all times material to this complaint, the defendant City of New York, acting through its police department and through the individual defendants, had *de facto* policies, practices, customs and/or usages of unnecessarily provoking, and/or unnecessarily resorting to deadly force when dealing with, emotionally disturbed and/or intoxicated individuals. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

117.   At all times material to this complaint, the defendant City of New York, acting through its police department and through the individual defendants, had *de facto* policies, practices, customs and/or usages of unnecessarily resorting to deadly force when dealing with a barricade situation. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

118.   At all times material to this complaint, the defendant City of New York, acting through its police department and through the individual defendants, had *de facto* policies, practices, customs and/or usages of unnecessarily, and disproportionately, resorting to deadly force when dealing with people of color, and young men of color in particular.

119.   At all times material to this complaint, the defendant City of New York, acting through its police department and through the individual defendants, had *de facto* policies, practices, customs and/or usages of seeking to cover up the misconduct of members of the NYPD, including but not limited to fabricating accounts and relying upon the "blue wall of silence."

120.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request judgment against defendants as follows:

(a)  Compensatory damages against all defendants, jointly and severally;

(b)  Punitive damages against the individual defendants, jointly and severally;

(c)  Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d)  Such other and further relief as this Court deems just and proper.

Dated:          April 14, 2018
                New York, New York

                                    _____/S/_____
                                    JEFFREY A. ROTHMAN, Esq.
                                    315 Broadway, Suite 200
                                    New York, New York 10007
                                    (212) 227-2980

                                    Gabriel P.  Harvis
                                    Baree N. Fett
                                    HARVIS & FETT LLP
                                    305 Broadway, 14th Floor
                                    New York, New York 10007
                                    (212) 323-6880
                                    gharvis@civilrights.nyc

                                    *Attorneys for plaintiffs*